UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,. | Case Nos. | 2:18-cr-00101-GEKP-4 |
| . | | 2:21-cr-00398-GEKP-1 |
| Plaintiff, . | | |
| . | U.S. Courthouse | |
| v. . | 601 Market Street | |
| . | Philadelphia, PA 19106 | |
| LORETTA BROWN, . | | |
| . | | |
| . | | |
| Defendant. . | | |
| . | October 5, 2021 | |
| . . . . . . . . . . . . . .. | 2:19 p.m. | |

CHANGE OF PLEA HEARING TRANSCRIPT
BEFORE HONORABLE GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the USA:                JASON PATRICK BOLOGNA, AUSA
                            MARY KAY COSTELLO, AUSA
                            U.S. ATTORNEY'S OFFICE
                            615 Chestnut Street, Suite 1250
                            Philadelphia, PA 19106

For Loretta Brown:          SUSAN M. LIN, ESQ.
                            KAIRYS, RUDOVSKY, MESSING, FEINBERG
                            & LIN, LLP
                            The Cast Iron Building
                            718 Arch Street, Suite 501 South
                            Philadelphia, PA 19106

Audio Operator:             MICHAEL COYLE

Transcribed By:             KELLI RAY, CET-349
                            GILLIAN LAWRENCE, CET-255
                            Lawrence Court Transcription & Video
                            P.O. Box 530790
                            DeBary, FL 32753
                            386.216.5921

Proceedings recorded by electronic sound
recording, transcript produced by transcription service.

1        (Call to Order of the Court.)

2             JUDGE GENE E.K. PRATTER:  Okay.  We are -- the hold

3  up was the court clerk's office has been unable to supply a

4  court reporter, so we're disadvantaged.  I was hoping to find

5  one somewhere, but there are none to be found.  So I urge you

6  all to reach out to the clerk's office and tell them that you

7  all have been delayed, just as I have been.

8             We're here for a change of plea hearing in connection

9  with Loretta Brown's two matters.  They're two criminal

10 matters.  They are docketed at 18-101-4 and 21-398-1, both the

11 United States of America versus Loretta Brown on the criminal

12 docket.

13            Why don't you all take -- we'll take attendance.  And

14 then when we can talk about what we're going to do here the

15 rest of the afternoon together.

16            MS. MARY KAY COSTELLO:  Good afternoon, Your Honor.

17 Mary Kay Costello for the United States.

18            MR. JASON BOLOGNA:  Jason Bologna for the Government.

19 Good afternoon, Your Honor.

20            THE COURT:  Good afternoon.

21            MS. SUSAN LIN:  Good afternoon, Your Honor.  Susan

22 Lin on behalf of Ms. Brown.

23            THE COURT:  Okay.  Good to see you both.  And Ms.

24 Brown of course is here.

25            Particularly because we are dealing with the very

1  poor substitute of the EC -- the -- what is this thing called,

2  Michael?  The ESR.  Sorry.  I'm going to encourage you all when

3  you speak to remove your masks because it's hard enough to get

4  a decent transcript with this mechanism.  A court reporter can

5  often figure out what's being said, but the machine is far less

6  able to deal with the issues.  Unless you're uncomfortable with

7  that, if you are then we'll just stagger on through.

8  　　　　　　So, Ms. Brown, I'm Judge Pratter.  I'm sure Ms. Lin

9  has explained to you quite correctly that today's proceedings

10  are primarily for you.  Certainly we're going to be focusing a

11  lot on you and your conduct.  It's my job to make sure you

12  understand how important everything is that I'm asking you

13  today is and to make sure that you know and understand what

14  your options are before you answer all of my questions and make

15  some very important decisions that you have to make.  It is my

16  goal to make sure that we are moving ahead in a way that is

17  fair to you as well as to the people of the United States.

18  　　　　　　Are you ready to start?

19  　　　　　　MS. LORETTA BROWN:  Yes.

20  　　　　　　THE COURT:  All right.  The purpose here is to give

21  you an opportunity to -- as to one matter namely 18-101-4, to

22  give you a chance to change your previously entered plea.  As

23  I've been told you intend -- as I last was informed, you intend

24  to enter a guilty plea and to substitute a previous not guilty

25  plea.  And then with respect to the other criminal action,

4

1  which is docketed at 21-398, which involves something that we

2  call an Information, that I will explain to you in greater

3  detail in a moment.  It is my understanding that you intend to

4  plead guilty to the Information.  All of this, as I have been

5  informed, is pursuant to a written plea agreement that we'll

6  talk about in some detail.

7          Now with respect to the Indictment, the first case I

8  mentioned, you've been charged in a superseding Indictment.  I

9  believe you're charged with Count 2 of a five count superseding

10 Indictment.  You are one of a number of defendants.

11 Specifically you were charged with maintaining a drug involved

12 premises and then aiding and abetting in -- all in violation of

13 Title 21 of the United States Code § 856 as well as Section 2

14 of Title 18 of the United States Code.

15          Turning to the other matter, the Information that I

16 alluded to a moment ago.  In the Information you've been

17 charged in a three count Information with committing various

18 drug, federal drug crimes.  Specifically you've been charged

19 with the unlawful distribution of a controlled substance in

20 each of these three counts.  All of which would be a violation

21 of Title 21 of the United States Code § 841(a)(1)(b)(1) and

22 (b)(1)(C).  Sorry.

23          We're going to get much more specific in terms of

24 what all of these charges rise from, but for now that's the

25 outline of why we're all here.  You should now stand up and Mr.

1 Coyle will take -- will administer an oath.

2            THE COURT DEPUTY:  Please raise your right hand.

3            THE DEFENDANT:  I don't pledge.

4            MS. LIN:  You can affirm at the end.

5            THE DEFENDANT:  I affirm.

6       (The Defendant is sworn.)

7            THE DEFENDANT:  Yes.

8            THE COURT DEPUTY:  Could you please have a seat and

9 state your full name and spell your last name for the record?

10           THE DEFENDANT:  Loretta Brown.  My last name is B-R-

11 O-W-N.

12           THE COURT:  Okay.  Have you ever used any other

13 names?

14           THE DEFENDANT:  No.

15           THE COURT:  So as far as you know, this is the name

16 you got when you were born?

17           THE DEFENDANT:  Yes.

18           THE COURT:  And English appears to be your first

19 language; is that correct?

20           THE DEFENDANT:  Yes.

21           THE COURT:  So as I mentioned, I'm going to be

22 explaining a lot of things to you.  I'm going to ask you a lot

23 of questions.  If at any time you do not hear me or understand

24 me, tell me and I'll do my best to speak more loudly, more

25 slowly or to use different words that you understand.

1          You're sitting there next to Ms. Lin so you can talk

2    to her anytime you want.  If you wish to take a break to speak

3    privately with her, that's fine.  Tell me and we'll do so.

4          We are speaking into the microphones, as I said,

5    because everything that we say is being recorded.  And with any

6    luck at all, somebody will transcribe this accurately and we'll

7    have a written record of everything that has happened here

8    today.  It means that you must speak up aloud with all of your

9    answers.  We are not filming, so you cannot nod or shake your

10   head in response to my questions.  Okay.  I think the mics just

11   -- did the mic?  Okay.

12         Do you understand that you are now under oath,

13   meaning you have given your word to tell the truth?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Do you understand that I'm going to

16   assume that the answers you give me are one hundred percent

17   truthful?

18              THE DEFENDANT:  Yes.

19              THE COURT:  It also means that because you're under

20   oath if you answer any of my questions falsely, then your

21   answers can and very likely will be used against you in another

22   prosecution, one for perjury or making a false statement.

23   Understood?

24              THE DEFENDANT:  Yes.

25              THE COURT:  Has anybody instructed you, told you or

1  even suggested or hinted that you could or should respond

2  untruthfully to any of my questions?

3            THE DEFENDANT:  No.

4            THE COURT:  You understand I'm asking you these

5  questions so I can be satisfied that you are competent and able

6  to enter pleas here today and that you are knowingly and

7  voluntarily giving up some extremely important rights that you

8  have by doing so?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Of what country are you a citizen?

11           THE DEFENDANT:  Our United States.

12           THE COURT:  How old are you?

13           THE DEFENDANT:  Today I got 67, I may be off.

14           THE COURT:  Is today your birthday?

15           THE DEFENDANT:  No, it's May 24, '53.

16           THE COURT:  Okay.  What is your home address?

17           THE DEFENDANT:  270 Windermere Avenue, Lansdowne, PA.

18           THE COURT:  How long have you lived there?

19           THE DEFENDANT:  Seven years.

20           THE COURT:  Does anybody else live there with you?

21           THE DEFENDANT:  No, not a person, my puppy.

22           THE COURT:  What kind of dog?

23           THE DEFENDANT:  Terrier.

24           THE COURT:  What's its name?

25           THE DEFENDANT:  Sheba.

1            THE COURT:  Did anybody else ever live at that

2   address with you, any other person?

3            THE DEFENDANT:  No.

4            THE COURT:  Are you married?

5            THE DEFENDANT:  No.

6            THE COURT:  Have you ever been married?

7            THE DEFENDANT:  Yes.

8            THE COURT:  To whom and when did that marriage cease?

9            THE DEFENDANT:  Glen Benson (Phonetic), and I think

10  that was 1979, November.

11           THE COURT:  That's when the marriage ended?

12           THE DEFENDANT:  Yes, it was annulled.

13           THE COURT:  Okay.  Do you consider yourself presently

14  engaged to be married?

15           THE DEFENDANT:  No.

16           THE COURT:  To your knowledge, does anybody think

17  that they're engaged to marry you?

18           THE DEFENDANT:  No.

19           THE COURT:  Do you have any children?

20           THE DEFENDANT:  No.

21           THE COURT:  Do you have any members of your family

22  who live in or around the greater Philadelphia region?

23           THE DEFENDANT:  My father.

24           THE COURT:  Where does he live?

25           THE DEFENDANT:  With me.

9

1            THE COURT:  At your home?

2            THE DEFENDANT:  Yeah, between me and my sister.

3            THE COURT:  Okay.  Then I'm going to go back to my

4    question when I asked you if anybody else lives at your home

5    with you.  Now your father you say lives there part-time at

6    least, right?

7            THE DEFENDANT:  Yeah, at least part-time.  He comes

8    and goes.  We take breaks.

9            THE COURT:  What's his name?

10            THE DEFENDANT:  Poindexter Brown.

11            THE COURT:  Where does your sister live?

12            THE DEFENDANT:  Cranston Street in Philadelphia.

13            THE COURT:  Okay.  And what is her name?

14            THE DEFENDANT:  Julia.

15            THE COURT:  What's her last name?

16            THE DEFENDANT:  Brown.

17            THE COURT:  Any other members of your family who live

18    in or around the Philadelphia region?

19            THE DEFENDANT:  I have a brother, Jason Brown, he

20    lives in the Northeast.

21            THE COURT:  Do you know where in the Northeast?

22            THE DEFENDANT:  I cannot think at the moment the

23    apartment complex.  I can't remember it.

24            THE COURT:  You're not presently in federal custody,

25    right?

1          THE DEFENDANT:  No, I'm not.

2          THE COURT:  Have you been in custody in connection

3  with either of these cases?

4          THE DEFENDANT:  No.

5          THE COURT:  How far did you go in school?

6          THE DEFENDANT:  I went to med school.

7          THE COURT:  What school?

8          THE DEFENDANT:  Philadelphia Osteopathic.

9          THE COURT:  When was that?

10         THE DEFENDANT:  1976.

11         THE COURT:  Is that the start or was that when you

12  graduated?

13         THE DEFENDANT:  No, I graduated in 1980.

14         THE COURT:  Okay.  Where did you go to college?

15         THE DEFENDANT:  Eastern college in St. Davids.  And I

16  went to Villanova on City Line Avenue.

17         THE COURT:  From which institution did you obtain a

18  bachelor's degree?

19         THE DEFENDANT:  Eastern.

20         THE COURT:  And what year was that?

21         THE DEFENDANT:  I believe that was 1974.

22         THE COURT:  And you got the DO degree when?

23         THE DEFENDANT:  1980.

24         THE COURT:  Was that your last year of formal

25  schooling?

1          THE DEFENDANT:  Well, I did internship and residency.

2          THE COURT:  Where did you do that?

3          THE DEFENDANT:  John FK in New Jersey.  And the

4    residency was at Park Pavilion, which doesn't exist anymore,

5    but it is out from Osteopathic medical school.

6          THE COURT:  Are you presently employed?

7          THE DEFENDANT:  No.

8          THE COURT:  When is the last time you were employed?

9          THE DEFENDANT:  I believe it was March 25 or 26.

10          THE COURT:  Of what year?

11          THE DEFENDANT:  This year.

12          THE COURT:  Who was your employer?

13          THE DEFENDANT:  Noosha Nikparvar.

14          THE COURT:  Was she the employer or was there some

15    corporate entity that you worked for?

16          THE DEFENDANT:  She was the employer, no corporate

17    entity.  It was termed Elite Urgent Care.

18          THE COURT:  Okay.  Well, you got paid a check on a

19    check, whose name was on the check, your paycheck?

20          THE DEFENDANT:  Hers.

21          THE COURT:  Okay.  How long had you worked for her?

22          THE DEFENDANT:  I believe at least ten years or more.

23    A long time.

24          THE COURT:  Directly for her?

25          THE DEFENDANT:  All -- there were several businesses.

1  I worked at the office in Scranton for awhile.  There was

2  another office, which I'm sorry I don't remember where it was.

3  But the bulk of my time was here in Pennsylvania.  I worked at

4  the office in the Northeast and the office in Abington.

5           THE COURT:  Okay.  Well, the information I have, Ms.

6  Brown --

7           THE DEFENDANT:  Um-hum.

8           THE COURT:  -- about your various employers may be a

9  little bit different in terms of the actual employer.

10          THE DEFENDANT:  Okay.

11          THE COURT:  But we'll kind of try and sort that out

12 here soon.

13          THE DEFENDANT:  Um-hum.

14          THE COURT:  Who do you -- who did you consider as

15 your last -- in your last job who was your boss?

16          THE DEFENDANT:  I still considered Dr. Nick's

17 companion Noosha to be the actual boss.  We had a manager named

18 Sue Baldwin, but I didn't get very involved with her.  If it

19 was something I wanted to confer about I went to Noosha, I

20 called her.

21          THE COURT:  That's --

22          THE DEFENDANT:  The wife.

23          THE COURT:  When you say companion, that was --

24          THE DEFENDANT:  Well, I'm old fashion.

25          THE COURT:  We'll --

1          THE DEFENDANT:  Um-hum.

2          THE COURT:  -- leave that for a moment.  More to the

3  point of my immediate concern here, have you taken any

4  medicine, drugs or pills of any kind in the last 48 hours?

5          THE DEFENDANT:  I have.  I took Paxil, 30 milligrams.

6  I took Glucophage, 500 milligrams.  In the last 48 hours I took

7  Simvastatin, 20 milligrams.  Mucinex, 600 milligrams extended.

8  That's -- oh, Advil.  I take 600 of that twice a day for

9  arthritis.

10          THE COURT:  Other than the Advil for arthritis, what

11  are the other medications for?

12          THE DEFENDANT:  The Glucophage is for diabetes non-

13  insulin dependent.  The Simvastatin is for lipid control.  The

14  Paxil, I take it for agitation and I'm still having menopausal

15  symptoms and it stops the sweating.  I'm trying to think is

16  there anything else in the last 48 hours that I've taken.

17  Mucinex, that's -- it keeps sinuses controlled, otherwise I get

18  face ache.

19          THE COURT:  Are there any medicines you're supposed

20  to be taking that you have not taken in the last 48 hours?

21          THE DEFENDANT:  I have scheduled Ativan, but I take

22  it when I can no longer stand not sleeping.  As long as I can

23  cope with it.  I don't sleep very much.  It does give me a

24  chance to get some rest, which has been hard for me to get for

25  some time.

1            THE COURT:  With respect to the non-over the counter

2   medications that you've just listed, who were the prescribing

3   physicians?

4            THE DEFENDANT:  I have to admit the prescribing

5   physician was me.  And I put adequate refills on it as opposed

6   to seeing a physician for refills.  That is my error.  My whole

7   point was actually the convenience of it, saving time not

8   having to go through a doctor, although I do have one, a Dr.

9   Vite (Phonetic) for an appointment.  And then whatever else he

10  might want to do.  And the time involved.  I didn't think about

11  it, to tell you the truth.  I've done it for a long time.  I

12  didn't think about it as there's a lot to think about.  But

13  this is an issue --

14            THE COURT:  Ms. Lin, do you want to confer with Ms.

15  Brown?

16            THE DEFENDANT:  Oh.

17            MS. LIN:  Your Honor, all this information has

18  already been provided to the prosecutors during proffer

19  sessions.

20            THE COURT:  Yeah, but today?

21            MS. LIN:  Your Honor, as far as competency, I do

22  believe that Ms. Brown is aware of what is going on.  She is

23  aware, in my opinion, of the charges.  She is aware of the

24  elements of the charges of what she's potentially facing.

25            THE COURT:  I wasn't even there yet.  I was really

1  expressing some concern about the continued conduct of

2  prescribing medications without a real live physician doing it,

3  the self-medicating --

4      MS. LIN:  Yes, Your Honor.

5      THE COURT:  -- part.

6      MS. LIN:  We've had that --

7      THE DEFENDANT:  But that's done.

8      MS. LIN:  -- we've had that conversation about the

9  prescriptions.

10      THE DEFENDANT:  Yeah.  And I haven't gotten more.

11  I'm now waiting for an appointment with a physician.  Sorry to

12  interrupt.

13      THE COURT:  Well --

14      THE DEFENDANT:  Um-hum.

15      THE COURT:  -- if you're comfortable, Ms. Lin, with

16  her, you know, talking about this and admitting here on the

17  record that the conduct that she supposedly has been accused of

18  is, if not to others, at least persisting as to herself.

19      MS. LIN:  Your Honor, my understanding is that Ms.

20  Brown did write these prescriptions before.

21      THE DEFENDANT:  For --

22      THE COURT:  Before what?

23      MS. LIN:  She has --

24      THE DEFENDANT:  Um-hum.

25      MS. LIN:  During the time period that is being

1 charged in the second case.  She has admitted to such conduct

2 to the prosecutors in proffer sessions.  She has been advised

3 that she should not write prescriptions for herself anymore.

4 She has Medicare.

5         THE COURT:  Now I see how effective that is.

6         THE DEFENDANT:  No, I stopped.

7         MS. LIN:  Your --

8         THE DEFENDANT:  Oh.

9         THE COURT:  Sorry.  I have great concern about not

10 having a licensed physician sign off on Ms. Brown's

11 capabilities.  I'm -- clearly if you and Mr. Bologna and Ms.

12 Costello are comfortable that based on everything you've done

13 in the past with Ms. Brown, that she knows what she's doing

14 here today, I will I suppose accept it until -- unless and

15 until I see some very obvious disconnect on that point.  But I

16 am concerned.  And maybe you all can confer and just -- I don't

17 know.  Mr. Bologna or Ms. Costello, I haven't heard from you on

18 this point?

19         MR. BOLOGNA:  Your Honor, very briefly, I agree with

20 Ms. Lin's comment that her client did disclose this information

21 to us.  At the time she disclosed it to us we had a

22 conversation in a proffered setting that she was not supposed

23 to be writing prescriptions for herself, especially since she

24 had lost her license.  And that would need to end.  That was

25 expressed by me, agreed to by Ms. Lin, as well as I think her

1  client understood that.  As of today's date, Your Honor,

2  there's a provision, once we get to the plea agreement, that

3  Dr. Brown understands that she cannot continue to commit any

4  kind of crime from this day forward and it could break the plea

5  agreement that we're about to enter in to.  Writing

6  prescriptions for herself -- and I want to get back to that in

7  a second, would be such conduct.  And I understand the Court's

8  concern on a number of levels to include that one.

9       It's my understand that, based on what Dr. Brown said

10 here today as well as what she said in the past, is that she

11 had written this prescription or refills for this prescription

12 some time ago.  So I do not believe -- I could be incorrect,

13 but I do not believe that she's actively writing prescriptions

14 for herself.  I believe she had done this in the past and had a

15 supply and that's what she's using.  That's my understanding of

16 where we are.

17       THE COURT:  Let me just pose a rhetorical question.

18 And I'm equally concerned that somebody may have written an

19 exorbitant number of, quote, refills for a prescription.

20 Because that's, frankly, that's just as bad as writing a new

21 one.

22       MR. BOLOGNA:  I understand your point.

23       THE COURT:  May I -- you know, I'm just raising it.

24 And, you know, the defendant said what she said on the record.

25 It's there for whatever reasons.  And, you know, if you're

1  convinced that she knows what she's doing and you all are

2  willing to put your names behind that, I can -- we can power on

3  through here today.

4          MR. BOLOGNA:  Your Honor, I am convinced today as I

5  have been in the past that Dr. Brown understands the nature of

6  what we're doing and the consequences of taking this step in

7  the criminal justice system.  I obviously am not in the same

8  position as Ms. Lin because she's not my client, but I am quite

9  comfortable that she is competent to proceed.

10         MS. LIN:  And, Your Honor, if I may?

11         THE COURT:  Um-hum.

12         MS. LIN:  Dr. Brown and I have met on multiple

13 occasions.  Dr. Brown has expressed in the past that she has

14 previously consistently had a prescription for Paxil.  I

15 believe it is for Paxil.  With regards to the second case, yes,

16 there were prescriptions that were written without a medical

17 license.  There has been no allegations that they were

18 prescriptions which were not medically necessary.  And just to

19 preview some of the things that --

20         THE COURT:  Yeah, but she was the one deciding for

21 herself what was medically necessary.

22         MS. LIN:  For herself in her own case, yes, that is

23 true.  But I would just put out there that there are no

24 allegations here that even after she lost her medical license

25 that she was over-prescribing.  I understand the Court's

1  concern that a person shouldn't be prescribing for themselves.
2  I get that.  And we have --
3          THE COURT:  The real question is does she get that?
4          THE DEFENDANT:  I do.
5          THE COURT:  And we'll find that out.
6          MS. LIN:  Yes, Your Honor.
7          THE COURT:  Okay.
8          MS. LIN:  But --
9          THE COURT:  I'm satisfied that we can go forward at
10 least until something more may pop up.  We'll see.  Okay.  But,
11 Ms. Costello, you want to weigh in on this?  Because I don't
12 want you to feel you've been left out.
13         MS. COSTELLO:  I don't feel left out at all, Your
14 Honor.  Thank you.  I concur with Ms. Bologna.  And I trust
15 that Ms. Lin has a good handle on the situation, Your Honor.
16         THE COURT:  Okay.  Fair enough.  Moving from
17 prescription drugs, have you had any alcoholic beverages in the
18 last 24 hours?
19         THE DEFENDANT:  No.
20         THE COURT:  Have you ever had or been treated for
21 mental illness or drug, narcotic or alcohol addiction?
22         THE DEFENDANT:  No.
23         THE COURT:  Have you ever been hospitalized for any
24 of those conditions?
25         THE DEFENDANT:  No.

1            THE COURT:  Are you currently or have  you recently

2  in the last three months or so been under the care of any

3  doctor, psychiatrist or psychologist?

4            THE DEFENDANT:  No.

5            THE COURT:  And do you have any hearing difficulties?

6            THE DEFENDANT:  No.

7            THE COURT:  Do any of the medications that you've

8  been taking or not taking interfere with your own assessment of

9  your own ability to both hear me and process what I am saying

10  and formulate responses to me?

11            THE DEFENDANT:  No.

12            THE COURT:  How do you feel today?

13            THE DEFENDANT:  Sad.

14            THE COURT:  Do you feel capable of going forward here

15  today?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Why?

18            THE DEFENDANT:  Because it has to be done.  And I

19  want it to be done.

20            THE COURT:  Do you feel you know what you're doing?

21            THE DEFENDANT:  Yes, I do.

22            THE COURT:  You know, you've got the right and you

23  understand, do you not, that you've got the right to be

24  represented by a lawyer at every step along the way here.  It

25  doesn't matter whether you plead guilty or not guilty, you

1  still have the right to a lawyer.

2          THE DEFENDANT:  Thank you.

3          THE COURT:  You know that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And if you meet the financial criteria

6  for the appointment of counsel under the Criminal Justice Act

7  and cannot afford a lawyer for your -- on your own, do you

8  understand that a lawyer would be appointed to represent you at

9  no cost to you?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And you've got a lawyer and that's Ms.

12  Lin who is sitting there right next to you, right?

13          THE DEFENDANT:  Yes, I do.

14          THE COURT:  Have you had time -- and you're going to

15  have to keep your voice up because remember we're recording

16  this.  Have you had time and a sufficient opportunity to

17  discuss your cases with her?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And are you satisfied with her

20  representation of you in this matter and with her advice?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Turning first to the case brought against

23  you by way of a grand jury Indictment, this is 18-101-4.  Did

24  you read a copy of the Indictment?

25          THE DEFENDANT:  Yes.

22

1              THE COURT:  And you had the opportunity to talk with

2    and ask Ms. Lin about the charges made against you in the

3    Indictment; is that right?

4              THE DEFENDANT:  Yes.

5              THE COURT:  And you understand that in summary the

6    charges against you in the Indictment are the ones that are set

7    forth in Count 2 concerning the maintenance of a drug involved

8    premises and aiding and abetting?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Okay.  And you understand that if you

11   plead guilty to the charges in Count 2, you're -- of the

12   Indictment you're going to be giving up your right to challenge

13   anything that you think was wrong or might have been improper

14   in the Indictment including -- or in the grand jury

15   proceedings, including any claim if the Government lawyers did

16   something wrong?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Now you've also been charged in what we

19   call an Information.  And that is written charges from the U.S.

20   Attorney accusing you of certain misconduct.  Have you read the

21   Information?  And this is in criminal action number 21-398.

22             THE DEFENDANT:  I have.

23             THE COURT:  And you understand that in summary the

24   charges against you there are in Counts 1, 2 and 3, namely the

25   unlawful distribution of controlled substances.  You know

1  that's what the Information is about?

2          THE DEFENDANT:  Can you repeat that statement?

3          THE COURT:  Sure.  Are you aware that the

4  Information --

5          THE DEFENDANT:  Um-hum.

6          THE COURT:  -- filed against you by the U.S.

7  Attorney --

8          THE DEFENDANT:  Um-hum.

9          THE COURT:  -- has three counts in it.  And you have

10 been charged in the Information with certain federal drug

11 crimes, namely you have been charged in Counts 1, 2 and 3 of

12 the Information with the unlawful distribution of a controlled

13 substance.  Each of which would be a violation of Title 21 in

14 the United States Code --

15         THE DEFENDANT:  Um-hum.

16         THE COURT:  -- Section 841 (a)(1) and (b)(1)(C).

17         THE DEFENDANT:  Yes.

18         THE COURT:  And do you understand that unless you

19 waive your right to be charged through an Indictment, you may

20 not be charged with a felony, which each of these are unless

21 and until a grand jury returns an indictment finding that there

22 is probable cause to believe that you committed a crime.

23         THE DEFENDANT:  Yes.

24         THE COURT:  And do you understand that if you do not

25 waive your right to require an indictment, the Government can

1  present this case to the grand jury and request the grand jury

2  to issue an indictment against you?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Do you understand that a grand jury is

5  composed of at least 16 and not more than 23 people, and at

6  least 12 of them must find that there is probable cause to

7  believe you committed the crimes with which you are charged

8  before you can be indicted?

9            THE DEFENDANT:  Yes.

10           THE COURT:  And do you understand that a grand jury

11  might or might not indict you?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Do you understand that if you give up

14  your right to an indictment by the grand jury this case will go

15  ahead against you on the U.S. Attorney's information just as if

16  you had been indicted by the grand jury?

17           THE DEFENDANT:  Yes.

18           THE COURT:  And have you discussed with your lawyer

19  the matter of giving up your right to demand an indictment?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Has there been any threats or promises

22  made to persuade you or convince you to give up your right to

23  require an indictment?

24           THE DEFENDANT:  No.

25           THE COURT:  Do you voluntarily give up your right to

1  an indictment from the grand jury and voluntarily let the

2  Government bring charges against you by way of the Information?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Ms. Lin, do you see any reason why your

5  client should not waive requiring an indictment?

6            MS. LIN:  No, Your Honor.

7            THE COURT:  Has she signed a form 18?

8            MS. LIN:  Yes, Your Honor.

9            THE COURT:  May I see it, please?

10            Okay.  And I'll return it there.  Thank you.

11            Ms. Brown, is that your signature on the waiver?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Did you read it and believe you

14  understood it before you signed it?

15            THE DEFENDANT:  Yes.

16            THE COURT:  Okay.  Ms. Lin, if you'll keep that

17  there, I'll collect it a little bit later.

18            You understand, Ms. Brown, you're charged with the

19  commission of felonies?  Those are serious crimes each

20  punishable by more than a year in jail.

21            THE DEFENDANT:  Yes.

22            THE COURT:  Okay.  And do you also understand that if

23  you plead guilty to a felony and if I accept your plea, you're

24  going to be found guilty of felonies and that can have a number

25  of very serious negative consequences.  For example, in some

1  states being found guilty of a felony and being a convicted

2  felon means that you lose very important civil rights such as

3  the right to vote here in Pennsylvania.  Currently the rule is

4  while somebody is in jail or in a halfway house, they are not

5  permitted to vote.  Some states take a more strident view on

6  that point, others a more flexible view.  The point is is that

7  there is a negative consequence to anybody who is a convicted

8  felon on this particular point.  Also, you lose the right to

9  sit on a jury if you are a convicted felon.  You lose the right

10 to hold certain public offices.  You will be denied the right

11 to possess any kind of a firearm.  And I would venture to say

12 you will lose the right to hold certain professional licenses,

13 particularly in your case a medical license of any sort.  Do

14 you understand that?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Okay.  And there may indeed be other

17 important rights that you lose if you plead guilty to a felony.

18 My purpose here is to highlight for you that there are

19 negative, important negative consequences to what you are going

20 to do if you're going to do it.  Understood?

21           THE DEFENDANT:  Yes.

22           THE COURT:  And is your willingness to plead guilty

23 the result of discussions that your lawyer has had with the

24 Government's lawyer, lawyers, with those discussions resulting

25 in a guilty plea agreement?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Mr. Bologna or Ms. Costello, would one of

3  you please state the material terms of the plea agreement?

4           MR. BOLOGNA:  Yes, Your Honor.  This plea agreement

5  combines the Indictment and the Information, Your Honor.

6  Loretta Brown is agreeing to plead guilty to Count 2 of the

7  superseding Indictment charging her with violation of Title 21

8  United States Code § 856 and Title 18 United States Code § 2.

9  This arises out of her employment at Advanced Urgent Care from

10 2014 through 2017.

11          Further, she agrees to plead guilty to Counts 1, 2

12 and 3 of an Information waiving prosecution by indictment,

13 charging her with unlawful distribution of a controlled

14 substance, that is Oxycodone in violation of Title 21 United

15 States Code § 841 subsection (b)(1)(C).  The plea arises from

16 her employment at Elite Medical Rehabilitation from 2020 to

17 2021.

18          Your Honor, for clarity purposes, Advanced Urgent

19 Care was renamed to Elite Medical.  They are essentially one

20 and the same, although they have different names.

21          Your Honor, under paragraph two, I'm going to touch

22 upon certain subsections.  Subsection (a), the defendant agrees

23 to plead guilty and agrees to provide truthful, complete and

24 accurate information and testimony.  She understands that if

25 she testifies untruthfully in any way -- material way, excuse

1 me, she can be prosecuted for perjury.

2          Subsection (c), she agrees that she will not falsely

3 implicate any person or entity and she will not protect any

4 person or entity through false information or omission.

5          Subsection (d), she agrees to testify truthfully as a

6 witness before any grand jury hearing or trial when called upon

7 to do so by the Government.

8          Subsection (k), she agrees that if the Government

9 determines that she has not provided full and truthful

10 cooperation or has not provided full and truthful information

11 about her assets, income or financial status or has committed

12 any federal, state or local crime between the date of this

13 agreement and her sentencing, then the Government has a number

14 of different remedies it can pursue.  The most salient here

15 would be under section C, it could decline to file any motion

16 under section 5K1.1.

17          Finally, under subsection L, the decision as to

18 whether the defendant has violated the terms of this agreement

19 and the election of a remedy or remedies will be in the sole

20 discretion of the Government.

21          Moving to paragraph 3, subparagraph (a), if the

22 Government determines that the defendant has fulfilled all of

23 her obligations as a cooperation, then at the time of

24 sentencing the Government will, subparagraph A, make the nature

25 and extent of her cooperation known to the Court.  Subparagraph

1  B, move for departure from the sentencing guidelines pursuant

2  to section 5K1.1 if the Government in sole discretion

3  determines that she has provided complete and substantial

4  assistance in the investigation or prosecution of another

5  person.  And under subparagraph C, the Government will make

6  whatever sentencing recommendation as to imprisonment, fines,

7  forfeiture, restitution and other matters which the Government

8  deems appropriate.

9          Paragraph 4, the defendant understands, agrees and

10  has had explained to her by her counsel that the Court may

11  impose the following maximum sentences for the superseding

12  Indictment Count 2, 20 years imprisonment, a period of

13  supervised release of not more than three years, $500,000 fine

14  and $100 special assessment.  For the Information Counts 1, 2,

15  and 3, those are punishable each of them by up to 20 years

16  imprisonment and a period of supervised release of not more

17  than three years, a $1 million fine and $100 special assessment

18  per count.  The total maximum sentence therefore for both the

19  superseding Indictment and the Information is as follows: 80

20  years imprisonment, a period of supervised release of not more

21  than three years, $3,500,000 in fines and a $400 special

22  assessment, forfeiture of all proceeds in the offense may also

23  be ordered.

24          And we're moving forward to paragraph 11, there are a

25  series of stipulations that are entered into here between the

1 Government and the Defense.  I'm going to cover them all, Your

2 Honor, because there's quite a few.

3        THE COURT:  And one of the reasons I'm encouraging

4 Mr. Bologna to do this is that in many respects sometimes some

5 of these matters would have to be proven by the Government at

6 the time of sentencing by specifically anything that involves

7 quantities of drugs.  That has a way, Ms. Brown, of affecting

8 the way sentencing guidelines work.  And we'll come back to

9 talking about the sentencing guidelines in a minute.  However,

10 it's very important that you understand that you are

11 eliminating any need for the Government to prove these

12 quantities by way of your agreement.  Okay.  That's why I want

13 you to listen carefully.  And I'm sure you and Ms. Lin probably

14 went over this or at least I would expect that.  And that is

15 why I want Mr. Bologna to enumerate these because they're very

16 important in terms of what you are agreeing need not be done at

17 the time of sentencing.  Fair enough, counsel?

18        MR. BOLOGNA:  Yes, Your Honor.

19        THE COURT:  Okay.  Go ahead.

20        MR. BOLOGNA:  Subparagraph (a), the parties agree and

21 stipulate that as of the date of this agreement, the defendant

22 has demonstrated acceptance of responsibility for her offense,

23 making her eligible for a two level downward adjustment.

24 Subparagraph (b), the parties agree and stipulate as of the

25 date of this agreement, the defendant has assisted authorities

1  in the investigation or prosecution of her own misconduct, by

2  timely notifying the Government of her intent to plead guilty;

3  and, therefore, she would receive a one level downward

4  adjustment.

5          Subparagraph (c), the parties agree and stipulate

6  that the controlled substances unlawfully distributed by the

7  defendant in Count 2 of the superseding indictment, are

8  converted in accordance with the drug equivalency table found

9  in Sentencing Guideline § 2D.1, commentary application note, 8D

10 as in Dallas, to yield a total weight which is greater than

11 1,000 killigrams but less than 3,000 killigrams of converted

12 drug weight, and that the defendant's guideline range should be

13 calculated based on this amount, pursuant to § 1B.1.3.

14         Subparagraph (d), the parties agree and stipulate

15 that the defendant abused a position of public or private trust

16 in the commission of this offense, resulting in a two level

17 upward adjustment pursuant to § 3B.1.3.  Subparagraph (3), the

18 parties agree and stipulate that the controlled substance is

19 unlawfully distributed by the defendant in Counts 1, 2, and 3

20 of the Information, and her relevant conduct from November 1,

21 202 through March 26, 2021, involving the further distribution

22 of controlled substances are combined pursuant to § 1B1.3.  The

23 combined weight of these controlled substances are converted in

24 accordance with the Drug Equivalency Table found in § 2D1.1 --

25 excuse me 2D.1, commentary application note 8D to yield a total

weight which is greater than 3,000 but less than 10,000

killigrams of converted drug weight and the defendant's

guideline range should be calculated based on this amount,

pursuant to § 1B1.3.

Subparagraph (f), the parties agree and stipulate

that the defendant committed the offenses charged in the

Information while on pretrial release, resulting in a three-

level upward adjustment pursuant to § 3C1.3.  Finally,

subparagraph (g), the Government understands that the defendant

will contend that she has satisfied the safety valve provisions

of Title 18, USC § 3353(f)(1) through (5) and Sentencing

Guideline § 5C1.2 and is eligible to receive a two level

downward sentencing guideline adjustment.

The defendant understands the Government has reserved

its right to make what -- to take whatever position on this

issue that it deems appropriate.

Your Honor, did you want to go over that again or do

you want me to continue?

THE COURT:  No, you can keep going.

MR. BOLOGNA:  Okay.

THE COURT:  I'll be covering some of that again.

MR. BOLOGNA:  Okay.  Paragraph 12, I'm going to cover

sections (a) and (b).  This deals with the waiver of certain

appellate and collateral rights to challenge her conviction.

Under paragraph 12(a) notwithstanding the waiver provision as

1  detailed in that paragraph, if the Government appeals from the

2  sentence imposed on the defendant, then the defendant may file

3  a direct appeal of her sentence.  Subparagraph (b), if the

4  Government does not appeal, then notwithstanding the waiver

5  provision that's set forth, the defendant may file a direct

6  appeal or petition for collateral leave, but may raise only a

7  claim if otherwise permitted by law, as follows:  Subparagraph

8  (1), (2), (3), and (4).  First, that her sentence for any kind

9  of conviction exceeds the statutory maximum that we've already

10 covered.  Second, that a decision by Your Honor to impose an

11 upward departure from the sentencing guideline.  Third,

12 challenging a sentence imposed by Your Honor and the imposition

13 of an upward variance in the final sentencing guideline range.

14 And, fourth, and finally, that the attorney who represented her

15 during the course of this criminal proceeding, provided

16 constitutionally ineffective assistance of counsel.

17         And I go on to paragraph 14, some of this was covered

18 before, but I think it's important so I'll read it in its

19 entirety.  Paragraph 14 states as follows, "The defendant

20 understands and agrees that, (a), the status of any

21 professional license or certification held by the defendant is

22 not protected by this agreement, and is a matter solely within

23 the discretion of the appropriate, licensing, regulatory, and

24 disciplinary authorities.  And subparagraph (b), the Government

25 will inform the appropriate professional, licensing,

1  regulatory, and disciplinary authorities in Pennsylvania of the

2  disposition of the criminal charges filed against the defendant

3  in this case."  Paragraph 16, "The defendant is satisfied with

4  the legal representation provided by her lawyer.  The defendant

5  and her lawyer have fully discussed the plea agreement, and she

6  is agreeing to plead guilty because the defendant admits she is

7  guilty."  Finally, paragraph 17, "It is agreed that the party's

8  guilty plea agreement contains no additional promises,

9  agreements, or understandings, other than those set forth in

10  this written guilty plea agreement.  And that no additional

11  promises, agreements, or understandings will be entered into,

12  unless in writing and signed by all parties."

13          THE COURT:  Thank you.

14          MR. BOLOGNA:  You're welcome.

15          THE COURT:  Ms. Brown, are those the terms of your

16  plea agreement with the Government as you understand them?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And you understand that to underscore one

19  of the points that Mr. Bologna just mentioned with some

20  emphasis, is that upon the end of this hearing, assuming you

21  plea guilty and I accept your plea, the Government's lawyers

22  are going to be telling the licensing authorities in the

23  Commonwealth of Pennsylvania that you have been convicted of

24  felonies involving drug matters; do you understand that?

25          THE DEFENDANT:  Yes, I do.

1           THE COURT:  Are you licensed or were you ever

2  licensed in any other jurisdiction other than Pennsylvania?

3           THE DEFENDANT:  No.

4           THE COURT:  Okay.  In case -- Mr. Bologna or Ms.

5  Costello, in case I forget, part of the instructions I will be

6  giving here is that Ms. Brown is not to try and become licensed

7  in any other jurisdiction that may not already know about her.

8  All right.

9           Ms. Lin, are those -- are there any essential terms

10 of the plea agreement that have not been outlined here?

11          MS. LIN:  No, Your Honor.

12          THE COURT:  Are there any other agreements or

13 conditions other than those that are set forth in the

14 agreement?

15          MS. LIN:  No, Your Honor.

16          THE COURT:  May I see the original signed guilty plea

17 agreement?

18          So I've got here a document, ma'am, with the caption

19 of your cases on it, except for the full number of 21-398-1.

20 It's called a guilty plea agreement.  Attached to it is a

21 shorter document called an Acknowledgment of Rights.  Each of

22 these show various signatures, one of which on each document

23 seems to be yours.  I'm going to ask you some questions about

24 these documents.

25          Mr. Coyle, thank you very much.

1          MS. LIN:  Thanks.

2          THE COURT:  Did you sign each of those documents?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Take a look before you answer me.

5          THE DEFENDANT:  I did.

6          THE COURT:  Okay.  So your signature is on the

7  agreement and on the acknowledgment, is that right?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Did you read each one before you signed

10  it?

11          THE DEFENDANT:  Yes, earlier.

12          THE COURT:  Did you believe you understood each one

13  before you signed it?

14          THE DEFENDANT:  I believed I did.

15          THE COURT:  Did you have the opportunity and did you

16  actually take advantage of the opportunity to discuss each of

17  these documents thoroughly with your lawyer before you signed

18  it?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Did you have enough time to talk to her

21  about it before you signed them?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Has anybody made any threats or promises

24  or assurances to you of any kind other than what's set forth in

25  that agreement to get you to sign it?

1           THE DEFENDANT:  No.

2           THE COURT:  And is it your intention to plead guilty

3 of your own free will?

4           THE DEFENDANT:  Yes.

5           THE COURT:  So we're going to talk now about the idea

6 of waiving rights or waivers of rights.  I want to make sure

7 you and I are talking about the same thing.  And that you know

8 or understand what the word waiver means.  For purposes of

9 these proceedings, the word waiver means to voluntarily and

10 intentionally abandon or give up some right, claim, or

11 privilege that you have, or the opportunity to take advantage

12 of some right, claim, or privilege that you have, or that you

13 even might have.

14           In effect, although it's spelled differently, you're

15 waiving good-bye forever when you waive a right; do you

16 understand that?

17           THE DEFENDANT:  Yes.

18           THE COURT:  So you understand that by entering a

19 guilty plea, you are waiving any challenge to the matter by

20 which you were arrested or chose to voluntarily turn yourself

21 into authorities?

22           THE DEFENDANT:  Yes.

23           THE COURT:  If you plead guilty to all of these

24 charges you are -- you are giving up any challenge to any

25 failure of the Government to obtain or the manner by which the

1  Government may have obtained any kind of an arrest warrant or a

2  search warrant?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Likewise, if you plead guilty you are

5  giving up any challenge to the Government's method of

6  investigating you, your colleagues and co-conspirators -- well,

7  this is not a conspiracy case, is it?  Your fellow actors.  Or

8  investigating your conduct, including gathering up evidence

9  against you or others, including taking statements from you or

10 others.  Do you understand that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Likewise, if you plead guilty, you're

13 giving up -- waiving -- any disputes you might have with the

14 Government about discovery in these cases.

15         THE DEFENDANT:  Yes.

16         THE COURT:  And then, finally, with respect to the --

17 the earlier case, the 18-101-4, if you plea guilty, you are

18 giving up any challenge to the proceedings before the

19 magistrate judge; correct?

20         THE DEFENDANT:  Yes.

21         THE COURT:  So you understand you've got the absolute

22 right to continue to plea guilty or to plea guilty to the

23 Information and make the Government prove the case against you?

24 You've got that right, you know?

25         THE DEFENDANT:  Yes.

1           THE COURT:  Did all of these, at least as to Ms.

2  Brown, all of this happen in the Eastern District; folks?

3           MR. BOLOGNA:  Yes.

4           THE COURT:  Okay.  So, Ms. Brown, you know you've got

5  the right to be tried by a jury if you do not plead guilty?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Or if you don't plead guilty, you could

8  ask to be tried by a judge alone without a jury.  There's no

9  absolute guarantee of that, but you could certainly ask; do you

10  understand?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you understand that if you do not

13  plead guilty because you decided to go forward with the trial,

14  and if you choose to have a jury trial, you can participate

15  through your lawyer to select the people to serve on the jury?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you understand that at trial you would

18  be presumed to be 100 percent innocent at the start?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And then the Government would be required

21  to prove that you're guilty beyond a reasonable doubt using

22  only competent evidence before you could ever be found guilty;

23  you know that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And do you understand that if you have a

1  trial, then the witnesses for the Government have to come here

2  in court and testify in your presence?

3             THE DEFENDANT:  Yes.

4             THE COURT:  You know that your lawyer then can cross-

5  examine all of those witnesses, can object to the evidence

6  offered by the Government, and can offer evidence on your

7  behalf; right?

8             THE DEFENDANT:  Yes.

9             THE COURT:  And do you understand that if you went to

10  trial you would have the right to subpoena and compel witnesses

11  to come here and testify on your behalf?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And then through your lawyer would have

14  the right to present witnesses, including character witnesses,

15  whose testimony when you consider all of the other evidence

16  could raise a reasonable doubt about your guilt; you know that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  So you understand that at a trial, while

19  you would have a right to testify if you choose to, you also

20  have the right not to testify?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And if you choose not to testify no

23  inference or suggestion whatsoever of your guilt can be drawn

24  from the fact that you choose not to testify; understood?

25             THE DEFENDANT:  Yes.

1           THE COURT:  In other words the fact you don't testify
2   cannot be used against you.  You've heard that before probably?
3           THE DEFENDANT:  Yes.
4           THE COURT:  And are you aware that if you went to
5   trial, your lawyer can argue against the Government of the
6   United States?
7           THE DEFENDANT:  Yes.
8           THE COURT:  And now, Ms. Brown, you understand that
9   if you went to trial before a jury you can only be -- you can
10  only be convicted by a jury that you unanimously found you
11  guilty?  What that means is there would be 12 people sitting
12  over there in that box.  Every single one of them would have to
13  be convinced beyond a reasonable doubt that you were guilty
14  before you could be convicted, understood?
15          THE DEFENDANT:  Yes.
16          THE COURT:  And then if you had a trial before a
17  judge without a jury, the judge likewise would have to be
18  convinced of your guilt beyond a reasonable doubt before you
19  could be convicted of any of these charges; right?
20          THE DEFENDANT:  Yes.
21          THE COURT:  Okay.  So in the absence of this guilty
22  plea, if you chose to have a trial, and if at the trial you
23  were found guilty, do you understand that you would have the
24  right to appeal that verdict to an appellate court and to do so
25  with the help of a lawyer?

42

1            THE DEFENDANT:  Yes.

2            THE COURT:  And the same deal, if you could not

3    afford a lawyer for the appeal, one would be appointed to

4    represent you at no cost to you to pursue an appeal;

5    understood?

6            THE DEFENDANT:  Yes.

7            THE COURT:  And do you understand that an appellate

8    court might reverse the conviction?

9            THE DEFENDANT:  Yes.

10           THE COURT:  But by pleading guilty you are giving up

11   your right to appeal from a conviction following a trial;

12   understood?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Now, according to this deal you've got

15   with the Government, the only appeal you can take from a guilty

16   plea, from this guilty plea, is in -- only a few very limited

17   and really rather rare circumstances.  That is if for some

18   reason the Government were to appeal your sentence, which you

19   should know does not happen all that frequently; if I were to

20   impose any legal or an unreasonable sentence above the

21   guidelines, which doesn't happen much at all, there are no

22   guarantees on this, but it doesn't happen all that often, if it

23   did you could take an appeal, arguably; if there are any errors

24   of a fundamental nature in this proceeding, perhaps you could

25   take an appeal from that, but that is rather rare, given the

1  fact I take a fairly long time to do these hearings and try

2  very careful -- very carefully to avoid mistakes; if there was

3  something your lawyer did that did not meet the minimum

4  standards of what we expect from lawyers, providing a

5  constitutionally effective assistance to their client, then you

6  could pursue that either -- well, presumably as an indirect

7  appeal, sort of like an end-run, not directly up the middle of

8  the field, but what we call a 2255 petition, and you could

9  raise it that way.

10         But this -- the point being here, ma'am, this is

11  pretty much the end of the road on all these charges; do you

12  understand that?

13              THE DEFENDANT:  Yes.

14              THE COURT:  So if you plead guilty and if I accept

15  your plea, you understand that you're waiving, meaning give up

16  forever your right to a further trial in either of these cases,

17  as well as all these other rights that we've been talking

18  about?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Do you understand all these rights?

21              THE DEFENDANT:  yes.

22              THE COURT:  Do you need to -- do you have any

23  questions about any of -- what you're giving up?

24              THE DEFENDANT:  No, not a question.

25              THE COURT:  Do you need to talk to Ms. Lin anymore

1  about this before we go on?  It's fine if you do.

2          THE DEFENDANT:  I'd like to ask her a question.

3          THE COURT:  Sure.  Go ahead.

4          (Attorney/client discussion)

5          THE COURT:  Ms. Lin, are we ready to go forward?

6          MS. LIN:  Yes, your Honor.

7          THE COURT:  Okay.  So you understand that by pleading

8  guilty and by waiving all these rights, Ms. Brown, you cannot

9  -- you cannot later come to any court anywhere, including any

10  appeals court, and claim you were not guilty or that your

11  rights relating to anything that we've talked about today have

12  been violated.  Understood?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And you understand that you're pleading

15  guilty to Count 2 in the superseding indictment case and the

16  three counts in the Information case, right?  You understand

17  that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Altogether there are four counts that

20  you're pleading guilty to, is that right?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Okay.  Mr. Bologna or Ms. Costello, could

23  you proceed to go through the essential elements of the crimes

24  to which the defendant appears prepared to plead guilty today,

25  as well as really just the material factual basis that relate

1 | to Ms. Brown?

2 |         MR. BOLOGNA:  Yes, your Honor.  Your Honor, relating
3 | to the superseding indictment in Count 2, the defendant is
4 | charged via aiding and abetting, with maintaining a drug
5 | involved premises.  The Government must prove the following
6 | elements beyond a reasonable doubt.  First, that the defendant
7 | permanently or temporarily maintained or opened, policed or
8 | used the place described in the indictment, that being the
9 | Advanced Urgent Care Center.  Second, that the defendant
10 | maintained that place for the purpose of manufacturing,
11 | distributing or using any controlled substance.  With respect
12 | to that, to establish this element, the Government must prove
13 | that the drug activity was a significant or important reason
14 | why the defendant maintained that place.  The Government is not
15 | required to prove the drug activity was the defendant's only
16 | purpose in maintaining the place.  And then, finally, there are
17 | -- that the defendant acted knowingly.

18 |         In this case, Your Honor, the person who owned the
19 | place was Mehdi Nikparvar-Fard.  He is the person who ran the
20 | Advanced Urgent Cares and Loretta Brown was a doctor who worked
21 | there.  Therefore, the provision under Title 18 § 2, aiding and
22 | abetting, is what would apply to her.  That reads, quote,
23 | "Whoever commits an offense against the United States or aids,
24 | abets, counsels, commands, induces, or procures its commission,
25 | is punishable as a principal."

1          As applied to this case, Dr. Brown aided and abetted

2   the possession, manufacture, or distribution of controlled

3   substances; and, therefore, would be liable as a principal.

4   And the Government goes on in the plea memo to define what the

5   unlawful distribution of a controlled substance would include.

6   It has four elements the Government must prove beyond a

7   reasonable doubt.  First, the defendant distributed a mixture

8   or substance containing a controlled substance.  Second, that

9   she distributed that substance knowingly or intentionally.

10  Third, that the controlled substance would be either oxycodone

11  or methadone.  And, finally, that the defendant, a doctor,

12  distributed the controlled substance outside the usual course

13  of professional practice, and not for a medically legitimate

14  purpose.

15          Those are the elements, Your Honor, with respect to

16  this case.  The distributions here would be by virtue of

17  writing prescriptions, and those prescriptions would be for the

18  drugs identified in the superseding indictment.  Your Honor, to

19  expedite matters I would mark as Government's Exhibit 1 and

20  enter into the record, the entirety of the Government's change

21  of plea memo, and note that on page 3 through page 11 in that

22  memo the Government outlines the facts of the case against Dr.

23  Brown as it relates to this superseding indictment.

24          Your Honor, as it relates to particular specific

25  details, there are -- there's extensive information --

1  information that would be testified to by Dr. Steven (Phonetic)
2  Thomas, who's the Government's expert witness in the area of
3  pain management.  He provides specific examples of the problems
4  that he saw with the prescribing advanced urgent care and he
5  would testify to those matters.  Further, as it relates to
6  individual patients who were seen by Dr. Brown, and I will go
7  through these very briefly, this begins on page 8, the
8  Government has identified four patients, Patient A.M., Patient
9  A.J., Patient E.M., and Patient R.G. -- excuse me, R.J.  These
10 patients are a illustrative of Dr. Brown's conduct.  I'll give
11 a few examples.  Beginning with Patient A.M., on or about April
12 30th, 2014, Loretta Brown saw Patient A.M. at the Advanced
13 Urgent Care located on Roosevelt Boulevard and prescribed that
14 patient a total of 45 oxycodone 15 milligram pills.  Prior to
15 that date on -- on January 30th, 2014, the Patient A.M. tested
16 positive for Suboxone and from working, either of which were
17 prescribed by Advanced Urgent Care, Suboxone is a drug that's
18 used to treat opiate addiction, begging the question why would
19 someone be providing an opiate prescription.
20        Again, on February 20th, 2014 the Patient A.M. tested
21 positive for Suboxone, morphine, and tramadol, none of which
22 were prescribed by Advanced Urgent Care.  With respect to this
23 patient, Dr. Thomas wrote that Patient A.M. was a patient who
24 had sustained traumatic injury and presented a year following
25 the injury seeking controlled substances.  She was noted to be

1  a persistent user of marijuana.  She had unexplained controlled

2  substances in her urine at the time of the presentation.  And

3  in his expert opinion, all controlled substance prescribed

4  beyond October 28th, 2013 was not for a medically legitimate

5  purpose in the usual course of professional practice.

6          The Government would present evidence about each of

7  the patients and the prescriptions that Dr. Brown wrote that

8  based on the expert testimony of Dr. Thomas would be illegal.

9  And the Government has identified that over the period from

10 February of 2014 through August of 2017, there were a total of

11 287 prescriptions which give rise to the weight that identified

12 in the guilty plea.

13         Turning to the Information, Your Honor, the

14 Information charges three counts of a violation of Title 21

15 U.S.C. § 841(a)(1), (b)(1)(C).  The Government would be

16 required to prove three elements.  First, that the defendant

17 distributed or dispensed a mixture of substance containing a

18 controlled substance.  Second, that the defendant distributed

19 or dispensed the controlled substances knowingly and

20 intentionally.  Third, that the controlled substance was

21 oxycodone.  And, fourth, that the distribution or dispensing

22 was outside the usual course of professional practice, and was

23 not medically necessary, i.e. part of the same things we would

24 have to prove on the indictment.

25         With respect to this case, the Government has again

1  outlined the facts.  I would mark as Government's Exhibit 2 the
2  Government's plea memorandum and introduce that into the
3  record, noting that beginning on page 3 and continuing through
4  page 5, the Government outlines the facts against Dr. Brown on
5  this matter.  It notes as follows that at this point, meaning
6  2020 and '21, Dr. Brown was working at Advanced Urgent Care,
7  which had been renamed Elite Medical and Rehabilitation.  That
8  business was maintained at 126 Easton Road in Willow Grove, and
9  Dr. Brown worked there during 2020 and 2021.  In particular,
10  Dr. Brown is licensed as an osteopathic medical doctor.  Her
11  last renewal of her license was entered on the date of November
12  2nd, 2018 and it authorized her to practice medicine up to the
13  date of October 31st, 2020.

14         Dr. Brown failed to renew her medical license in
15  2020, and as such beginning on November 1st, 2020, she was not
16  lawfully authorized to prescribe controlled substances;
17  however, she continued to do so and wrote opioid prescriptions
18  in November and December of 2020, as well as in January,
19  February, and March of 2021.  The investigation looked at
20  records obtained from the prescription drug monitoring program,
21  and those records revealed that Dr. Brown wrote a total of 767
22  prescriptions for oxycodone, thereby distributing 89,295 pills,
23  as well as 19 prescriptions for Percocet, thereby distributing
24  2,280 pills in the period from November 1, 2020 through March
25  26th, 2021.  The Government would produce evidence in addition

1  to those records they would include testimony from Person 1,

2  who is referred to as the office manager at that facility, and

3  she described the hours that Dr. Brown worked, the amount that

4  she worked per week, and the number of patients that she would

5  see, estimating that Dr. Brown wrote prescriptions for

6  approximately 19 to 20 patients per day when she was at the

7  medical office.

8        The Government would also call a witness from law

9  enforcement, who actually visited the facility on March 25th,

10  2021, and spoke to that individual.  The person's name is

11  Detective Parker, P-A-R-K-E-R, and first name Cameron, C-A-M-E-

12  R-O-N.  In a phone conversation between Detective Parker and

13  Loretta Brown she indicated she knew her license had expired

14  and that she continued to write prescriptions.  The Government

15  would also rely upon the opinion of Dr. Thomas, who I referred

16  to earlier.  Dr. Thomas had previously issued an opinion in a

17  case involving a defendant named Highland Campbell.  Dr.

18  Campbell's case presented the same exact factual pattern we

19  have here, a person who was formerly licensed to practice,

20  whose license had lapsed.  Dr. Thomas wrote then and we repeat

21  here, quote, "Any person who undertakes to dispense controlled

22  substances must have the proper credentials in order to do so.

23  Any person who does not have a license to practice medicine or

24  other license that would grant prescribing authority and a

25  valid registration from the Drug Enforcement Administration of

1  the United States Department of Justice, cannot issue a

2  medically legitimate prescription in the usual course of

3  professional practice.  The notion that one could is

4  oxymoronic."

5         As such, Dr. Brown wrote a total of 786 prescriptions

6  for opioid pain killers from November 1st, 2020 through March

7  26th, 2021, and those were illegal because she was not lawfully

8  authorized to issue any of them due to the lapse in her

9  license.  Those are the facts in as a brief a format as I can

10  present them to the Court.  Thank you.

11         THE COURT:  Thank you.  Ms. Lin, did you and your

12  client go over the particulars of the factual premise of these

13  cases?

14         MS. LIN:  Yes, your Honor.

15         THE COURT:  Okay.

16         Ms. Brown, you remember going through the

17  Government's memos and paying attention to what they say you

18  did?

19         THE DEFENDANT:  Yes.

20         THE COURT:  So nothing you say in response to my next

21  several questions can be used against you if you decide not to

22  plead guilty.  But on the assumption that you want to go

23  forward here, do you agree that what the Government's lawyer

24  has told me and included in the two plea memoranda is -- is

25  accurate?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you agree that what the Government

3  tells me is what happened as to you?

4          THE DEFENDANT:  Yes, I'm assuming that you're not

5  dealing with the difficulty I had in getting my license

6  renewed.  Are you not dealing with that?

7          (Attorney/client discussion)

8          THE DEFENDANT:  Okay.  I have the answer.

9          THE COURT:  You are suggesting, perhaps, that there

10 are some things you're going to want to tell me later when we

11 get together at sentencing.  The fact of the matter is you

12 prescribed these drugs and you did not have a valid license.

13         THE DEFENDANT:  That is correct.

14         THE COURT:  That's the -- that's what you're accused

15 of.

16         THE DEFENDANT:  Um-hum.

17         THE COURT:  And you did that, right?

18         THE DEFENDANT:  Yes.

19         THE COURT:  So you fully admit all these facts?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Is there anything that the Government has

22 told me, either in writing or here in person, that you think is

23 not accurate?

24         THE DEFENDANT:  No.

25         THE COURT:  And do you understand what the

1  Government's lawyer has said are the essential elements that

2  have to be proven under the law?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Okay.  We're going to talk about

5  sentencing here in a minute, but is there any -- are there any

6  questions that anybody thinks I should ask Ms. Brown about the

7  case in terms of a factual basis or the essential elements?

8          MR. BOLOGNA:  Nothing from the Government, Your

9  Honor.  Thank you.

10          MS. LIN:  No, Your Honor.  Thank you.

11          THE COURT:  Okay.

12          So now, Ms. Brown, you understand that if you earn

13  yourself a longer or a tougher sentence than you might expect,

14  or if you're sentenced to prison, which you very well could be,

15  and you find prison to be worse than you thought it was going

16  to be, you will be stuck with your plea.  Do you understand

17  that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  The same would go for the length of the

20  conditions of supervision that would follow imprisonment or any

21  other feature of your sentence; do you understand?

22          THE DEFENDANT:  Yes.

23          THE COURT:  If you don't like it, that's too bad,

24  you're going to still have the plea on record; do you

25  understand that?

1        THE DEFENDANT:  Yes.

2        THE COURT:  And do you understand that nobody --

3    nobody can guarantee what sentence the Court will determine you

4    have earned?

5        THE DEFENDANT:  Yes.

6        THE COURT:  Do you understand that if you plead

7    guilty and if I enter the guilty pleas here, and later sentence

8    you on the basis of your guilty plea, I'm going to be doing

9    that after I consult with the sentencing guidelines and other

10   applicable law and after I consider a presentence report;

11   understood?

12       THE DEFENDANT:  Yes.

13       THE COURT:  Now, on the basis of a guilty plea you

14   know you could earn yourself a sentence up to the maximum

15   permitted by law?

16       THE DEFENDANT:  Yes.

17       THE COURT:  Mr. Bologna, would you state that once

18   again, please?

19       MR. BOLOGNA:  Yes, your Honor.  The maximum sentence

20   for all crimes in this case, Your Honor, would be 80 years

21   imprisonment, a period of supervised release of not more than 3

22   years, $3,500,000 in fines, and a $400 special assessment,

23   further forfeiture of all proceeds from the offense also may be

24   ordered.

25       THE COURT:  Ms. Lin, do you agree that that is

1  accurate?

2          MS. LIN:  Yes, your Honor.

3          THE COURT:  Ms. Brown, you understand that the

4  maximum penalties are just as set forth by Mr. Bologna?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And have you and Ms. Lin talked about the

7  sentencing guidelines?

8          THE DEFENDANT:  Yes.

9          THE COURT:  You know your sentence is going to be

10 determined by me and I'm going to consider what the guidelines

11 have to say.  Do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Now, no matter what you and the attorney

14 for the Government and your lawyer think the guidelines say, or

15 no matter what you-all think I should do about applying the

16 guidelines to you, I have to be the one to decide which

17 guidelines are appropriate in your case; do you understand

18 that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  All right.  And do you understand that

21 there is no guarantee that you get this so-called safety valve

22 that I see referenced hereto?

23         THE DEFENDANT:  Yes.

24         THE COURT:  All right.  And when -- your lawyer is

25 going to argue for that, I guess, but there are no guarantees

1  that -- that you deserve it; do you understand?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Okay.  Essentially, I have to be the one

4  to decide how the guidelines work in your case; agreed?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And I told you before that you've already

7  agreed to the quantity of drugs involved here and that those

8  quantities can cause the guidelines to go up and down based on

9  the numbers of drugs; do you understand?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Okay.  And the Government's not going to

12  have to prove anything on that score because you've agreed to

13  it; right?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Now, I'm not going to even decide how the

16  guidelines could work in your case until after a presentence

17  report is prepared and you and the Government had all had a

18  chance to review that and object to it and such.  But even if

19  you disagree with the presentence investigation report, your

20  guilty plea will still be binding on you, and you cannot change

21  your plea from guilty to not guilty because you don't like

22  what's in the report.  Understood?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And you know that the Court can and

25  indeed may impose a sentence that's more severe or less severe

1  than the sentence that the guidelines recommend?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Have you ever been on supervision,

4  probation, or parole for a crime before?

5          THE DEFENDANT:  No.

6          THE COURT:  Well, the reason I ask is that if you

7  were -- focusing on the indictment case, the earlier case,

8  18-101, if you had been on supervision, probation, or parole

9  when you committed that crime, your plea of guilty would almost

10 certainly be an admission of your having violated conditions of

11 supervision.

12          Now, it becomes a little more complicated when you

13 committed a crime while you were -- I guess you were on

14 pretrial release at the time of the commission of the crimes

15 that are the subject of the Information.  And the expectation

16 would have been that you not commit any more crimes.  So the

17 fact that you were on a kind of supervision from the earlier

18 case and still committed more crimes, is going to be a matter

19 that I consider when we get together at the time of sentencing.

20 Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you also understand that parole has

23 abolished in the federal system?  You will not be released on

24 parole if you're sent to prison in these cases.

25          THE DEFENDANT:  Didn't know.

1        THE COURT:  What?

2        THE DEFENDANT:  I did not know.

3        THE COURT:  Do you want to talk to Ms. Lin about

4   this?

5            (Attorney/client discussion)

6        THE COURT:  The reason I ask people this is that by

7   watching TV, some people think they know what the criminal

8   justice system is all about, and they've heard this word

9   parole, no such thing in the federal system.  There is no

10  guarantee you get out early in other words.  Do you understand

11  that?

12       THE DEFENDANT:  Yes.

13       THE COURT:  Do you have a record of any prior

14  convictions for anything?

15       THE DEFENDANT:  No.

16       THE COURT:  All right.  If you plead guilty and you

17  get -- and we enter a conviction for these crimes, in the

18  future if you commit a crime these convictions are going to go

19  on your record, and your punishment for a crime in the future

20  can be made much more severe because you've got these

21  convictions on your record; do you understand that?

22       THE DEFENDANT:  Yes.

23       THE COURT:  Okay.  Now, if you are sent to prison in

24  this case, when you're released there will be a period of

25  supervision imposed and there will be conditions on that

1 supervised release.  If you break any of the rules of

2 supervision, you're going to be sent back to prison to serve

3 even more time, do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  And with respect to being placed

6 on supervision, your waiver of all your various rights,

7 including your appellate rights, include giving up the right to

8 quarrel about the conditions of supervision.  Understood?

9          THE DEFENDANT:  Yes.

10          THE COURT:  And you understand that on the basis of a

11 guilty plea, you can earn yourself a sentence up to the maximum

12 permitted by law, right?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And you cannot withdraw your guilty plea

15 if I impose a tougher sentence than you expect or that anyone

16 else recommends.  Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Now, when we get together at the time of

19 sentencing, your lawyer and the Government's lawyers can come

20 in here, they can agree on facts, they can make

21 recommendations, they can make motions together, they can make

22 requests, they can sing the same song, I do not have to sing

23 along and buy what they're asking me to do; do you understand

24 that?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Okay.  Your guilty plea is still going to

2     be binding on you whether or not I agree with the lawyer --

3     with what the lawyers tell me.  Do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  And you understand that your

6     professional license is going to stay at least suspended.  It

7     may be revoked entirely and never to be had again; do you

8     understand?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Okay.  Mr. Coyle, are these quiet yeses

11    being recorded by the machine?

12         THE CLERK:  I'll check.

13         THE COURT:  Yeah, we'd better check.

14         (Pause)

15         THE COURT:  Great.

16         So you understand, Ms. Brown, you've talked with your

17    lawyer about the charges against you, you talked about your

18    right to contest all these charges, you've talked about the

19    maximum possible penalties; correct?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And you understand that by pleading

22    guilty and by waiving all the rights we've been talking about,

23    you cannot later come to any court anywhere, including any

24    appeals court, and claim you are not guilty or that your rights

25    have been violated; agreed?

1          THE DEFENDANT:  Yes.

2          THE COURT:  So, Ms. Brown, having heard from me what

3   your rights are if you plead not guilty and what might happen

4   if you do plead guilty, do you still really want to give up

5   your right to a trial in these matters and plead guilty in both

6   of the matters?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Has anybody threatened you, coerced you,

9   or forced you in any way to do this?

10          THE DEFENDANT:  No.

11          THE COURT:  Are you doing it just to save somebody

12   else's skin?

13          THE DEFENDANT:  No.

14          THE COURT:  And you understand that the only deal you

15   got is the one I've been told about here today, right?

16          THE DEFENDANT:  Yes.

17          THE COURT:  You need to speak up a little bit more,

18   ma'am.

19          THE DEFENDANT:  Yes.

20          THE COURT:  You understand -- are there -- there

21   aren't any state charges, are there?

22          THE DEFENDANT:  No, there are not.

23          THE COURT:  Okay.  Let me ask some questions of the

24   lawyers here, Ms. Brown.  Do any of the counsel here for the

25   Government or for the defendant have any doubt as to Ms.

1 Brown's competence to enter pleas here today?

2          MR. BOLOGNA:  The Government does not.

3          THE COURT:  Okay.  You know, Mr. Bologna, your thigh

4 muscles are going to really hurt if you don't fully stand up

5 while you answer.

6          MR. BOLOGNA:  The Government does not, Your Honor;

7 thank you.

8          THE COURT:  Okay.  I just only care about -- about

9 that.

10          Are you -- how about you, Ms. Lin?

11          MS. LIN:  No concerns, Your Honor.

12          THE COURT:  Are you satisfied with -- that -- the

13 defendant's willingness to plead guilty is completely

14 voluntary?

15          MR. BOLOGNA:  We are satisfied, Your Honor.

16          MS. LIN:  Yes.

17          THE COURT:  Are you also satisfied that a guilty --

18 that guilty pleas are not based on any plea agreement, except

19 as disclosed on this record?

20          MR. BOLOGNA:  We are satisfied, Your Honor.

21          MS. LIN:  Yes, your Honor.

22          THE COURT:  Are you also satisfied that a guilty plea

23 in both cases is being made with a full understanding by Ms.

24 Brown of the nature of the charges and the maximum possible

25 penalties provided by law and her legal rights to contest all

1  these charges?

2          MR. BOLOGNA:  Yes, your Honor.

3          MS. LIN:  Yes, your Honor.

4          THE COURT:  And are you satisfied that there is a

5  factual basis for the plea?

6          MR. BOLOGNA:  Yes, your Honor.

7          MS. LIN:  Yes.

8          THE COURT:  Okay.  With respect to 21-398, I do find

9  that the waiver of indictment is knowing, intelligent, and

10  voluntary, and so I would accept that waiver.  And with respect

11  to both actions I'm going to ask Mr. Coyle to -- as to 21-398

12  it will be an arraignment and a taking of a plea, and then a --

13  a plea with respect to 18-101.

14          So you should stand up now, Ms. Brown.

15          THE CLERK:  Loretta Brown, you have been charged in

16  an indictment in Criminal Number 18-101-4, charging you with

17  Count 2, maintaining a drug involved premises and aiding and

18  abetting in violation of Title 21, USC § 856(a)(1) and Title

19  18, USC § 2.  And in criminal information -- and in a criminal

20  information at Docket Number 21-398, charging you with Counts 1

21  through 3, distribution of controlled substances in violation

22  of Title 21, USC § 841(a)(1), (b)(1)(C).  As to Counts -- as to

23  Count 2 of Indictment Number 18-101-4 and Counts 1 through 3 of

24  Criminal Information Number 21-398, how do you plead now,

25  guilty or not guilty?

1            THE DEFENDANT:  Guilty.

2            THE COURT:  A little louder, please.

3            THE DEFENDANT:  Guilty.

4            THE COURT:  All right.  Finding the Court -- well,

5    first of all, the guilty plea agreement in all of these papers

6    will remain part of the record.

7            Mr. Coyle, would you tell chambers staff that I'm

8    going to have to reschedule that first phone call.  I'm going

9    to do the second matter, but the first one we need to

10   reschedule?

11           It's the finding of the Court in the case of the

12   United States of America vs. Loretta Brown in Criminal Action

13   Number 18-101-4 and 21-398 that the defendant, Ms. Brown, is

14   fully alert, competent, and capable of entering informed pleas

15   here today.  Second, I find that her plea of guilty is knowing,

16   voluntary, and intelligently made, not the result of ignorance,

17   fear, force, or threats, or any promises apart from the plea

18   agreement disclosed on this record.  Third, I find that there

19   is an independent basis, in fact, for her pleas of guilty.

20   Fourth, I find that the defendant has admitted the facts that

21   prove each of the essential elements attending to the crimes

22   alleged and to which she is pleading guilty.  Fifth, I find

23   that the defendant understands the charges, she understands her

24   legal rights as well as the maximum possible penalties.  Sixth,

25   I find that she understands that she's waiving her right to

trial.  And, seventh, I find that her waiver of her other

constitutional and statutory rights, including her right to

purse a direct or an indirect appeal, all of this is knowing

and invol -- and voluntary, and will not result in any

miscarriage of justice.

Therefore, Ms. Brown, I do accept your guilty plea in

both cases, and you are adjudged guilty of all of the offenses

charged.  You may now sit down.

I'm going to order that a presentence investigation

report be prepared by the Probation Department.  You should by

all means co-operate with the officer whose job it is to

prepare that report.  Your lawyer may be present, if you wish,

when you give information to the probation officer.  You and

your lawyer will have the chance to go over that report when

you get it, and comment on it.  And that will be before

sentencing.

In my view -- it is only my view, it is not a matter

of law, I think it's a good idea to sit down and go over it

face to face with your lawyer.

Under the Federal Rules of Criminal Procedure and our

local rules, you have to tell the Government's lawyer and the

Government's lawyers have to tell you, and you both have to

tell the probation officer if you've got any objections to the

report.  And you must do that within 14 days of getting it.  If

you wait longer than two weeks then you lose or you waive the

1  right to make objections to the report.

2          Okay, folks.  Sentencing is set for these cases for

3  February 10th, 2022 at 10 o'clock in the morning, here in

4  Courtroom 10B.  If that really must be rescheduled, Mr. Coyle

5  will work with you-all in that regard.  Nonetheless I expect to

6  have sentencing memoranda, that's one from each side, in hand

7  so that I have one from each of you, no later than one full

8  seven-day calendar week before sentencing.  That would be

9  February 3rd, 2022.

10          Ms. Brown is not in custody.  I've received a report

11  from pretrial services with a fair number of just standard

12  conditions.  There doesn't seem to be anything that was

13  untoward that has occurred since January 17th, 2019, except, of

14  course, the fact that she broke the law again, and that was a

15  very bad idea, Ms. Brown.  And if it happens again, I'll be the

16  one that finds out about it.

17          Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  You've now been convicted, and that means

20  I'm telling you directly that a further violation of a federal,

21  state, or a local law will be a very serious matter, and very

22  likely will result in you being detained in jail before

23  sentencing.  Is there anything ambiguous about that statement?

24          THE DEFENDANT:  No.

25          THE COURT:  Do you have any questions about my

1  directive on that point?

2            THE DEFENDANT:  No.

3            THE COURT:  This also includes using any prescription

4  to ingest any prescription drug where the prescription has not

5  been issued by a licensed medical professional.  So all of

6  those refills you've got are worthless and should be burned.

7  Do you understand that?

8            THE DEFENDANT:  I don't have any more refills.

9            THE COURT:  I don't care whether you're saying that

10 or not.

11           THE DEFENDANT:  I do understand.

12           THE COURT:  Okay.  I don't want you to find any more

13 prescriptions on some pad in some desk somewhere, and no

14 refills, and to underscore this I'm going to add -- I'm

15 assuming that the Government is not asking for detention right

16 now; is that correct?

17           MR. BOLOGNA:  Correct.

18           THE COURT:  All right.  We're going to leave in place

19 all the conditions that have been in place, plus there -- I am

20 going to add -- add two more.  Number one, do not try to get a

21 medical license in any other jurisdiction; okay?  Do you

22 understand that?

23           THE DEFENDANT:  I do.

24           THE COURT:  And that includes any kind of healthcare

25 license, you know, nursing, you know, whatever, nothing, zero.

1   Also, I'm going to add a condition that the probation officer,
2   pretrial services, conduct random urinalysis not less
3   frequently than every two or three weeks to find out what
4   you've got in your system.  So I suggest that if you're going
5   to have -- if you're going to be taking any kind of
6   medications, all of which may be legitimate meds for
7   conditions, but they better be prescribed by a real doctor
8   licensed to practice.  So you should have those prescriptions
9   ready to show your probation officer when you have the
10  urinalysis done; do you understand that?
11              THE DEFENDANT:  I do.
12              THE COURT:  What?
13              THE DEFENDANT:  I do.
14              THE COURT:  Okay.  Just to remind you, you've got a
15  $50,000 OR bond.  You're on supervision.  Don't get a passport.
16  You are restricted to travel within the Eastern District of
17  Pennsylvania, unless you're given permission in advance by your
18  probation officer.  Don't get any guns.  You cannot have any
19  contact with any of the people you worked with or for or who
20  are also defendants or were defendants in 18-101-4.
21              Also, if you do get a job or you work anywhere, you
22  better tell your probation officer ahead of time and realize
23  that your probation officer may be reaching out to any new
24  employer to make sure they know the accurate situation with
25  respect to you.  Understood?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  We're going to get together again

3    in February.  At that time, Ms. Lin will tell you that I

4    usually invite every defendant to tell me anything they think I

5    should know about them, how they got into the situation, why,

6    you know, you did what you did.  You got a fair number of

7    things to try and explain and I just want you to know you have

8    the opportunity to explain it from your perspective.  But

9    that's when we get together again.  I -- as I said, do not

10   start prescribing any medications again for yourself, because

11   I'm going to find about it, and then you're going to go to

12   jail, even before sentencing.  Because I've been as clear,

13   using words of pretty much one syllable as I can be on this

14   point.  Understood?

15          THE DEFENDANT:  Understood.

16          THE COURT:  And that includes the Ativan, even if you

17   have trouble sleeping.  So go to a real doctor who's licensed

18   to practice.

19          Anything else from anybody?

20          MR. BOLOGNA:  No, Your Honor.

21          THE COURT:  Oh, I signed off on the CO order.

22          MR. BOLOGNA:  Thank you.

23          THE COURT:  And make sure Mr. Coyle has the -- the

24   original papers.

25          Any questions, Ms. Brown?

1        THE DEFENDANT:  No.

2        THE COURT:  Ms. Lin?

3        MS. LIN:  No, Your Honor.

4        THE COURT:  Okay.  Thanks.  We're adjourned.  Bye.

5        MR. BOLOGNA:  Thank you.

6        (The proceeding concluded at 3:56 p.m.)

7                        * * * * *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

71

1          **C E R T I F I C A T I O N**

2          I, Kelli Ray, CER-349, CET-349, court approved

3    transcriber, certify that the foregoing pages 2 to 30 is a

4    correct transcript from the official electronic sound recording

5    of the proceedings in the above-entitled matter, and to the

6    best of my ability.

7

8    _____

9    CER-349, CET-349, COURT TRANSCRIBER      DATE:  October 8, 2021

10

11

12          **C E R T I F I C A T I O N**

13          I, Gillian Lawrence, CER-255, CET-255, court approved

14   transcriber, certify that the foregoing pages 31 to 70 is a

15   correct transcript from the official electronic sound recording

16   of the proceedings in the above-entitled matter, and to the

17   best of my ability.

18

19

20   _____

21   CER-255, CET-255, COURT TRANSCRIBER      DATE: October 8, 2021

22

23

24

25

*Lawrence Court Transcription & Video, LLC * 386.216.5921*